Filed 7/6/26  Pro Legal Funding v. Allor CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PRO LEGAL FUNDING, LLC<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID ALLOR,<br><br>Defendant and Appellant. | B336861<br><br>(Los Angeles County<br>Super. Ct. No. 23STCV07526) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Broadbelt, Judge.  Affirmed.

The Hundley Law Firm and Paul B. Hundley for Defendant and Appellant.

Wolk & Levine, Sarah R. Wolk and Zachary Levine for Plaintiff and Respondent.

## INTRODUCTION

Pro Legal Funding, LLC had two liens on any recovery awarded to Derek Alonso in Alonso's personal injury litigation. Alonso, with defendant David Allor as his counsel, obtained a verdict and judgment in his favor. The judgment funds were distributed without paying Pro Legal's liens.

Pro Legal then sued Alonso and Allor for failing to pay the liens. Allor filed a special motion to strike under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1] The trial court denied Allor's motion on the grounds that Allor failed to meet his burden at the first step of the anti-SLAPP analysis. Allor appealed.

We affirm. Allor has not demonstrated that Pro Legal's causes of action arise from protected activity. Failing to pay liens is not protected activity, and any protected attorney-client communication about paying the liens was incidental to Pro Legal's causes of action.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Background

In March 2019, Alonso sued Premium J. Trucking, Inc. in Riverside County for personal injuries. In two transactions in March and June 2019, Alonso sold to Pro Legal a "contingent right to a portion of the Proceeds" of his legal claim against Premium J. for $40,500.00. In return, Alonso agreed to pay Pro Legal $80,500.00 from any recovery he obtained in the Premium J. litigation.

---

[1] All undesignated section references are to the Code of Civil Procedure. "SLAPP" stands for "strategic lawsuits against public participation." (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.)

In September 2019, Alonso's former counsel substituted out, and Allor substituted in as Alonso's counsel. Following a trial in October 2021, Alonso secured a $600,000 judgment against Premium J. The judgment was satisfied. Pro Legal has not been paid.

## B.     Pro Legal's complaint

In April 2023, Pro Legal filed a complaint against Alonso and Allor, alleging the following facts. Pro Legal's March and June 2019 loans[2] to Alonso were for $20,250 each, with repayment in the amount of $40,250 each, secured by two liens on Alonso's claims against Premium J. Allor was aware of the loans and liens, and for a time he regularly updated Pro Legal about the status of the litigation. At some point Alonso and Allor stopped communicating with Pro Legal. Alonso won his lawsuit against Premium J. in October 2021. Premium J. satisfied the judgment in November 2021, thus triggering the liens' repayment terms. Alonso and Allor did not inform Pro Legal about the verdict and did not pay the liens.

Pro Legal alleged ten causes of action relating to the unpaid liens: 1. breach of contract, 2. intentional interference with contractual relations, 3. intentional interference with prospective economic advantage, 4. negligent interference with prospective economic advantage, 5. common count: money had and received, 6. conversion, 7. civil conspiracy, 8. negligence, 9. breach of fiduciary duty, and 10. breach of implied-in-fact contract. All causes of action except breach of contract included Allor. Each cause of action was a variation on a single theme: Alonso and/or Allor had an obligation to satisfy Pro Legal's liens

---

[2]     The parties dispute whether these were "loans." The distinction does not matter for purposes of this appeal.

3

from Alonso's litigation recovery, Alonso and Allor failed to pay Pro Legal, and Pro Legal suffered damages as a result.

Some causes of action alleged that Alonso and Allor communicated and worked together to deprive Pro Legal of its money. For example, in the causes of action for intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage, Pro Legal alleged that Allor knew of the liens, induced Alonso's breach of the two loan agreements, and encouraged Alonso to not satisfy the liens. In the cause of action for civil conspiracy, Pro Legal alleged that Alonso and Allor "agreed to a common plan or design to avoid or disrupt Pro Legal's lien rights."

## C. Anti-SLAPP special motion to strike

### 1. *Motion*

Allor filed a special motion to strike under section 425.16. Under section 425.16, "[a] cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788, citing § 425.16, subd. (b)(1).) "Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "If the

4

defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid*.)

Allor argued that the first prong of the anti-SLAPP analysis was met because "[T]he alleged acts of wrongdoing by Allor related to his legal advice to Alonso regarding the judgment and the claims against that judgment and the distribution of the judgment pursuant to that advice. As such, the gravamen of all . . . causes of action against Allor relate to his advice and counsel concerning litigation, which is protected activity."

Allor argued that the second prong of the anti-SLAPP analysis was met, because the purchase agreements were void, Allor owed no duty to Pro Legal, and Pro Legal's claims were barred by the litigation privilege.

2. *Opposition and reply*

Pro Legal opposed Allor's motion. Pro Legal framed the issue as "whether a lawyer's illegal retention of client funds somehow immunizes that lawyer from civil liability merely because that lawyer claims his misdeeds were conducted in loose connection with the practice of law." It argued, "The anti-SLAPP statute was not designed to immunize a lawyer entrusted with client funds to swindle lienholders."

Pro Legal argued that Allor failed to meet the first prong of the anti-SLAPP analysis because "misappropriating client funds and violating client directives is not 'legal advice.' It is theft." Pro Legal asserted that the "gravamen of the claims here is Allor's misappropriation of funds" owed to Pro Legal, and to the extent any communication between Allor and Alonso was implicated, "it could not have been more than incidental to the misconduct."

Pro Legal also argued that it could demonstrate a probability of success for the second step of the anti-SLAPP

5

analysis. It asserted that its agreements with Alonso were legal, that Allor had a duty to comply with Alonso's wishes to pay the liens with the litigation recovery, and failing to pay lienholders is not protected by the litigation privilege.

Allor filed a reply in support of his motion, and objected to some of the evidence Pro Legal submitted with its opposition. Pro Legal objected to evidence Allor submitted with his reply.

3.    *Ruling*

The trial court denied Allor's motion. The court stated in a written ruling that Allor did not meet his burden to show that the causes of action alleged against him arose from protected activity. The court acknowledged that communication in litigation is generally considered protected activity, but stated that Allor "has not sufficiently (1) identified the wrongful acts that form the basis for each cause of action, or (2) explain[ed] how those alleged acts constitute protected activity. [Allor] therefore has not shown that each of the . . . causes of action arises from the acts performed by [Allor] as part of his legal representation of" Alonso. The court "acknowledge[d] that some of the claims set forth in the Complaint may implicate protected activity," in that the complaint alleged that Allor encouraged Alonso not to pay Pro Legal. But the actual conduct underlying Pro Legal's claims—the distribution of the judgment funds—was not protected activity. The court therefore did not consider the second step of the analysis.

Allor timely appealed. (Code Civ. Proc., § 904.1, subd. (a)(13).)

## DISCUSSION

Allor contends his anti-SLAPP motion should have been granted because Pro Legal's claims arise from Allor's

6

representation of Alonso in litigation, including Allor's legal advice to Alonso regarding the distribution of the judgment funds. Pro Legal argues that the distribution of judgment funds is not protected activity, so the motion was properly denied.

## A. Legal standards

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity." (*Park, supra*, 2 Cal.5th at p. 1067.) The appellant bears the burden of affirmatively demonstrating error. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671.)

An anti-SLAPP motion may challenge a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech." (§ 425.16, subd. (b)(1).) Such acts include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (*Id*., subd. (e).)[3]

---

[3] Section 425.16, subdivision (e)(3) and (4) address communication made in connection with an issue of public interest. Allor does not specify which of the four categories of speech is at issue here, but we presume he intended to invoke section 425.16, subdivision (e)(1) and (2), which reference litigation. He does not argue that this case involves an issue of public interest.

As stated above, "[a]nti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park, supra,* 2 Cal.5th at p. 1061.) Thus, a "defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

## B. Allor has not met his first-step burden

Pro Legal alleged in its complaint that Alonso and Allor failed to pay Pro Legal's liens. Pro Legal argues, "Regardless of what communication took place" between Alonso and Allor, "the act of improperly distributing funds" is not protected activity under section 425.16. We agree.

Although some litigation-related communication constitutes protected activity under section 425.16, failing to pay a lien does not implicate any of the categories of protected activity in the statute. "'Any act'" under section 425.16, subdivision (b)(1) "includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) However, the act of paying or not paying a creditor, without more, is not communicative conduct even if it relates to litigation. It is not an "act . . . in furtherance of the . . . right of petition or free speech" (§ 425.16, subd. (b)(1)), nor is it a "written or oral statement or writing" made in connection with litigation (*id.*, subd. (e)(1), (2)).

8

Similar circumstances were at issue in *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859 (*Old Republic*). There, an underlying action was settled; the settlement funds were placed in a client trust account with a stipulation that allocation would be determined later. After the funds were withdrawn, a dispute arose about how the settlement proceeds should have been distributed. One of the creditors, Old Republic, sued a law firm and its partner regarding the distribution. The defendants filed an anti-SLAPP motion, which the trial court partially granted.

The Court of Appeal in *Old Republic* observed that the "defendants assert at one point in their brief that the targeted causes of action 'all aris[e] from [the] stipulation' which resulted in the deposit of settlement funds in defendants' trust account. If true this would bring these causes of action within the statute's protection, because the stipulation was a 'writing made in connection with an issue under consideration or review by a ... judicial body.' (§ 425.16, subd. (e)(2).)" (*Old Republic, supra*, 230 Cal.App.4th at p. 867.) However, Old Republic's claims did not arise from the stipulation: "Old Republic's injury arose from defendants' withdrawal of the funds that were the subject matter of the stipulation. That is the conduct by which defendants allegedly breached the contract between the parties, violated a duty of care, and injured Old Republic. It is that conduct from which these causes of action must be held to arise. For purposes of the SLAPP statute, the stipulation must be viewed as incidental." (*Id*. at p. 869.) The court further held that the withdrawal of funds itself was not communicative, so it was not protected activity under section 425.16. (*Id*. at p. 870.)

Allor argues that this case is more like *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546 (*O&C Creditors*).  In that case, an insurance dispute ended in a settlement; an action for attorney fees then ensued.  One creditor alleged it had a lien on the litigation recovery; it cross-complained against the insurance company and its law firm "for settling the insurance coverage lawsuit in derogation of the alleged attorney lien."  (*O&C Creditors, supra*, 42 Cal.App.5th at p. 556.)  The cross-defendants filed an anti-SLAPP motion, which the trial court granted on the grounds that "the settlement of civil lawsuits is petitioning activity protected by the anti-SLAPP statute."  (*Id.* at p. 559.)

The Court of Appeal affirmed.  The cross-complainant argued that "there is no protection for the 'wrongful disbursement' of settlement funds" (*O&C Creditors, supra*, 42 Cal.App.5th at p. 567), but the court rejected that argument. The court noted that "settlements are protected conduct under the anti-SLAPP statute."  (*Ibid.*)  The settlement the parties negotiated did not account for the attorney fee lien, thus the parties' protected settlement *negotiations* were the basis for the lien not being paid.  The court stated that the "protected settlement activity—both the[ ] entry into an agreement that disclaims the existence of any attorney lien . . . and the effectuation of that settlement agreement by paying only [other creditors] in derogation of the alleged attorney lien—underlie the elements" of the cross-complaint.  (*Id.* at p. 568.)  Thus, the "conduct in disbursing the settlement proceeds—i.e., carrying out the terms of the settlement agreement—cannot be neatly cleaved from the indisputably protected activity of negotiating and agreeing to the settlement itself."  (*Id.* at p. 569.)

10

Allor argues, "As in *O&C Creditors*, settlement and judgment proceeds here would also not exist in the absence of protected settlement and litigation activity." This argument misinterprets the holding of *O&C Creditors*. The issue in *O&C Creditors* was not that the payment choices were litigation-related, but rather that those choices were made during settlement negotiations, which were protected communications. Here, by contrast, there are no allegations or evidence that Pro Legal was not paid as a result of communications during litigation, as opposed to private discussions between Allor and Alonso after the litigation ended. Thus, this case is more like *Old Republic* than *O&C Creditors*, because the sole issue is how the judgment funds were distributed. The failure to pay Pro Legal's liens—the act upon which Pro Legal's claims are based—is not protected activity.

Allor points out that Pro Legal's complaint also includes allegations about communication between Allor and Alonso, which resulted in Pro Legal not getting paid. For example, in the causes of action for intentional interference with contractual relations and with prospective economic advantage, Pro Legal alleged that Allor "encourage[ed] Alonso to not satisfy the liens" and "induced" Alonso to breach his contract with Pro Legal. In the cause of action for conspiracy, Pro Legal alleged that Allor and Alonso "agreed to a common plan or design to avoid or disrupt Pro Legals' lien rights." Allor argues that in light of these allegations, his "protected legal advice regarding Pro Legal's alleged claims on litigation proceeds is the crux of the alleged wrongful conduct by Allor." He asserts that wrongful distribution of the judgment is "not separate from the alleged

11

conspiracy, but is the required act in furtherance of the conspiracy."

However, even assuming that Allor and Alonso's post-litigation discussions constitute protected activity, "a claim is not subject to a motion to strike simply because it contests an action or decision that was arrived at following speech or petitioning activity . . . . Rather, a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra*, 2 Cal.5th at p. 1060.) Here, Allor's communication with Alonso *itself* is not the basis for any liability. Although communication between Allor and Alonso may have preceded the distribution of the judgment funds, that is not the activity that is the basis for Pro Legal's claims. " When liability is asserted for the target act of a conspiracy, the preliminary speech or petitioning activity is simply evidence of the defendant's liability, not 'the wrong complained of.'" (*Spencer v. Mowat* (2020) 46 Cal.App.5th 1024, 1037; see also *id*. at p. 1036 [conspiracy is a doctrine of vicarious liability, "not a cause of action itself"].)  None of Pro Legal's claims for recovery focuses on Allor's communication with Alonso, as opposed to Pro Legal's liens not being paid.

Any communication between Allor and Alonso that led to that result is incidental Pro Legal's claims.  "Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394.) Allor therefore has not met his burden to show that Pro

12

Legal's claims arose from protected activity, and thus has not met his first-step burden of the anti-SLAPP analysis.[4]

## DISPOSITION

The order denying Allor's special motion to strike is affirmed. Pro Legal is entitled to recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COGLIATI, J.[*]

We concur:

ZUKIN, P. J.

---

[4]    In the trial court Allor submitted a declaration with his reply, and the trial court sustained Pro Legal's objection to it on the grounds that new evidence is generally not permitted with a reply.  On appeal, Allor argues the trial court erred because Pro Legal had seen the declaration before, so it was not "new."  Allor does not discuss the substance of the declaration, nor how the court's exclusion of it prejudiced him. An appellant may not "'simply stat[e] a bare assertion that [a ruling] is erroneous and leav[e] it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments'" for the appellant.  (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)  Allor's claim of evidentiary error is therefore forfeited.

[*] Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MORI, J.